IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE W. FOUTCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  14-cv-1366-SCW |
| | ) |
| JEREMY ZIMMER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Bruce Foutch, currently incarcerated at Graham Correctional Center, filed his complaint alleging that Defendant Jeremy Zimmer used excessive force while arresting him on July 28, 2013 (Doc. 1).  Plaintiff alleged that Zimmer used excessive force when he shot Plaintiff with a taser gun while Plaintiff was returning to his car after an altercation with another individual (Doc. 9, p. 3).  This matter is before the Court on Defendant's motion for summary judgment (Docs. 21 and 22).  Defendant Zimmer argues that he is entitled to summary judgment under the doctrine of qualified immunity because his use of a taser to subdue Plaintiff was reasonable.  Based on the following the Court **DENIES** the motion for summary judgment.

FACTUAL BACKGROUND

Plaintiff filed a complaint on December 11, 2014 alleging that Defendant Zimmer used excessive force on him on July 28, 2013 (Doc. 1). Specifically, Plaintiff alleges that Zimmer used a taser to shoot him after an altercation with the owner of a storage unit over Plaintiff's property at the storage unit and that Zimmer deployed the taser without warning and after the altercation had concluded (*Id*. at p. 4). After Plaintiff was hit by the taser, he fell to the ground and hit his head on a rock (*Id*.). Plaintiff sustained a skull fracture in the altercation (*Id*. at pp. 4 and 7).

The following facts are relevant to this summary judgment motion. On July 27, 2013, Defendant Zimmer responded to a local storage unit to deal with an issue involving Plaintiff at the storage unit (Doc. 22-1 at ¶¶3-4). Plaintiff claimed that the owner of the storage unit, Steven Wiechert, was selling his property improperly as Plaintiff was current on his storage unit rent (*Id*. at ¶ 4; Doc. 24, p. 3). Defendant told Plaintiff that the matter was civil in nature and that he would have to take Wiechert to court to get his belongings back (Doc. 22-2, p. 1-2; Doc. 24, p. 3). Plaintiff informed Defendant that he was going to beat Wiechert's ass if he did not return his property (Doc. 22-2 at p. 2). According to Plaintiff's girlfriend, Anna Washburn, Plaintiff told Defendant he would not leave until Wiechert returned Plaintiff's belongings and that if Wiechert showed up without his property "it would not be good" (Doc. 24, p. 3).

After Plaintiff's conversation with Defendant, Wiechert arrived at the scene (Doc. 22-2, p. 2). Plaintiff ran towards Wiechert as he exited his car and struck Wiechert in the

face several times (Doc. 22-1 at ¶ 6; 22-2, p. 3; Doc. 24, p. 4). Plaintiff's girlfriend acknowledges in her affidavit that Plaintiff and Wiechert were in a physical altercation, although the exact extent of the "altercation" is not indicated in her affidavit (Doc. 24, p. 4). After striking Wiechert 3-4 times, the incident report from the Dupo Police Department indicates that Wiechert retreated to his car and that Foutch continued to throw punches at Wiechert (Doc. 22-2, p. 2). Washburn testified that when Wiechert ran back to his vehicle, Plaintiff also began to head towards his own vehicle, not towards Wiechart (Doc. 24, p. 4).

According to Defendant, when he saw Plaintiff continue to attack Wiechert at Wiechert's car, he yelled for Plaintiff to stop and get on the ground (Doc. 22-2, p. 2; 22-1 at ¶6). Plaintiff did not comply and instead drew back to strike Wiechert (*Id*.). At that point, Defendant fired the taser at Plaintiff, causing Plaintiff to fall on his right side, striking his head on the ground (Doc. 22-2, p. 2; Doc. 22-1 at ¶ 6-7). Defendant testified that he did not allow the taser to complete the full five second cycle but turned the taser off at 3 seconds (Doc. 22-1 at ¶ 8). Plaintiff was then arrested and an ambulance was brought to the scene to treat Plaintiff's injuries (*Id*. at ¶¶ 8-9).

Plaintiff, however, offers a different version of events. Anna Washburn testified in her affidavit that Plaintiff did not continue to pursue Wiechert to Wiechert's vehicle after their initial altercation. Instead, when Wiechert retreated to his vehicle, Plaintiff also retreated towards his own vehicle (Doc. 24, p. 4). Washburn testified that Defendant then fired the taser on Plaintiff without warning (Doc. 24, p. 4).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (*quoting* FED. R. CIV. P. 56(e)(2)). A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when it presents definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, 231 F.3d 360, 364 (7th Cir. 2000).

On summary judgment, the Court considers the facts in the light most favorable

to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).**

### B. Excessive Force

Claims that an officer used excessive force in the course of an arrest are governed by the Fourth Amendment's reasonableness standard. *Acevedo v. Canterbury*, **457 F.3d 721, 724 (7th Cir. 2006) (quoting** *Graham v. Connor*, **490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).** In evaluating the reasonableness of the force the operative question "is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an 'objectively reasonable' manner." *McAllister v. Price*, **615 F.3d 877, 881 (7th Cir. 2010).** The Court considers three factors in determining the reasonableness of the officer's actions:

> (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest by flight.

*Id.***(citing** *Graham*, **490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443);** *see also Padula v. Leimbach,* **656 F.3d 595, 602 (7th Cir. 2011) (quoting** *Jacobs v. City of Chicago*, **215 F.3d 758, 773 (7th Cir. 2000).** Other factors to consider are whether the individual was under arrest or a suspect in a crime, whether the individual was armed, and whether the

individual was attempting to interfere with an officer's duties. *Padula*, **656 F.3d at 602**. "In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed – to the community or to the arresting officers – if left unattended." *Id*. **(quoting** *Jacobs*, **215 F.3d at 773).**

### C. Qualified Immunity

Defendant Zimmer argues that he is entitled to summary judgment under the doctrine of qualified immunity. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, **457 U.S. 800, 818 (1982);** *Pearson v. Callahan*, **555 U.S. 223, 231 (2009);** *Denius v. Dunlap*, **209 F.3d 944, 950 (7th Cir. 2000).** It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, **543 U.S. 194, 198 (2004).** It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, **457 U.S. at 816;** *Denius*, **209 F.3d at 950.**

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson,* **555 U.S. at 232,** *see Brosseau*, **543 U.S. at 197;** *Wilson v. Layne*, **526 U.S. 603, 609 (1999).** While it is often

beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, **555 U.S. at 236.**

## ANALYSIS

Here, the Court cannot award summary judgment to Defendant Zimmer on the basis of qualified immunity because there are still issues of fact as to whether his actions constituted a violation of Plaintiff's constitutional rights. *See Lewis v Downey*, **581 F.3d 467, 478 (7th Cir. 2009).** There is a dispute of fact over whether the force that Defendant deployed was excessive under the circumstances. The parties do not dispute that when Wiechert arrived that he and Plaintiff got into an altercation (Doc. 24, p. 4; Doc. 22-1 at ¶6). However, the parties dispute what happened after Wiechert retreated back to his car after the initial altercation. Defendant testified that Plaintiff continued to pursue Wiechert and continued to hit him even after orders to stop and get on the ground by Defendant (Doc. 22-2, p. 2). However, Anna Washburn, Plaintiff's girlfriend, testified that when Wiechert retreated to his car, Plaintiff also retreated towards his own car and did not pursue Wiechert (Doc. 24, p. 4). The parties also dispute how Defendant deployed his taser. Defendant testified that he gave Plaintiff the order to stop and when Plaintiff reached back to throw another punch at Wiechert, Defendant deployed his taser (Doc. 22-2, p. 2). However, Washburn testified that Defendant did not give a warning and instead deployed his taser at Plaintiff as Plaintiff retreated to his vehicle (Doc. 24, p. 4). Thus, at the time that Defendant deployed his taser, Plaintiff, in viewing

the facts in the light most favorable to him, was not a threat to anyone and was retreating to his vehicle with no order from Defendant to stop.

Defendant Zimmer points to the case of *Abbott v. Sangamon County*, **705 F.3d 706 (7th Cir. 2013)** to support his position that the use of a taser does not constitute excessive force. While in that case the Seventh Circuit noted that "the use of the taser against an actively resisting suspect either does not violate clearly-established law or is constitutionally reasonable", here there is a dispute of fact as to whether Plaintiff was actively resisting or whether he was an immediate threat to Defendant or Wiechert. *Abbott*, **70 F.3d at 727.** The Court finds that there is a dispute of fact over whether Plaintiff posed an immediate threat to anyone as Plaintiff has offered evidence that he was retreating to his vehicle at the time that Defendant deployed his taser. *Cyrus v. Town of Mukwonago*, **624 F.3d 856, 862 (7th Cir. 2010) (when material fact is in dispute, the case must go to jury).** As the Court finds the disputes to be material and bear on the issue of whether the force deployed was excessive under the circumstances, the Court finds that summary judgment is inappropriate at this time.

Further, the Court finds that the right was clearly established at the time of the incident, preventing summary judgment. It is clearly established law that an officer may not use excessive force and that "using a significant level of force on a non-resisting or a passively resisting individual constitutes excessive force." *Alicea*, **2016 WL 805529, at * 7.** It is also well settled that an officer may not continue to use force once a suspect has been subdued and complies with an officer's orders. *Johnson v. Scott*, **576 F.3d 658,**

**660 (7th Cir. 2009) (citing *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001)).** Viewing the facts in the light most favorable to Plaintiff, Defendant deployed his taser after he was in a physical altercation with Wiechert, but at the time the taser was deployed, Plaintiff was no longer in the confrontation and was retreating. Thus, if Plaintiff was not posing a threat to anyone at the time the taser was deployed, Defendant's actions could be considered excessive despite Plaintiff's previous actions. *See Alicea v. Thomas*, **--F.3d --, 2016 WL 805529, at * 4 (2016) ("[T]he prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior --- including resisting arrest, threatening officer safety, or potentially carrying a weapon." (internal citations omitted)).** Accordingly, the Court finds that Defendant is not entitled to summary judgment on the grounds of qualified immunity.

## CONCLUSION

Accordingly, the Court **DENIES** Defendants' motion for summary judgment (Docs. 21 and 22).

**IT IS SO ORDERED**.
DATED:     March 8, 2016.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge